UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF MISSISSIPPI

ABERDEEN DIVISION

| | |
|---|---|
| ROGER STARNER JONES, JR., MD | PLAINTIFF |
| VS. | NO. 1:21cv136-GHD-DAS |
| PHYCON, INC., HEALTHCARE INNOVATION GROUP, LLC D/B/A RELIAS HEALTHCARE AND OTHER RELATED RELIAS ENTITIES, NORTH MISSISSIPPI MEDICAL CENTER, JOHN DOES A-J, and JANE DOES A-J | DEFENDANTS |

**COMPLAINT**

NOW COMES the Plaintiff Roger Starner Jones, Jr., MD, by and through counsel, and files this Complaint against Phycon, Inc., Healthcare Innovation Group, LLC D/B/A Relias Healthcare and Other Related Relias Entities, North Mississippi Medical Center, John Does A-J, And Jane Does A-J and in support thereof would show unto the Court as follows:

**PARTIES**

1.

Plaintiff Roger Starner Jones, Jr., MD ("Dr. Jones") is an adult resident citizen of the State of Tennessee, who resides at 4000 Hillsboro Pike, Apt. 307, Nashville, TN 37215.

2.

Defendant Phycon, Inc. is a domestic for-profit business corporation with its principal place of business located in the State of Oklahoma at 4401 W. Memorial Road, Suite 121, Oklahoma City, Oklahoma. Phycon, Inc. may be served upon its registered agent, Larry Glenn Ball, Esq., by any means permitted under the Federal Rules of Civil Procedure.

3.

Defendant Relias Healthcare is a business in the State of Mississippi listed on the Mississippi Secretary of State website as a fictitious name of Healthcare Innovation Group, LLC. There are 20 other entities associated with or owned by Healthcare Innovation Group, LLC d/b/a Relias Healthcare, including, but not limited to, Relias Emergency Medicine Specialists of Tupelo, LLC. Healthcare Innovation Group, LLC d/b/a Relias Healthcare is registered as a limited liability company in the State of Mississippi with a principal office at 201 West Main Street, 2nd Floor,

Tupelo, MS 38804. The registered agent for Healthcare Innovation Group, LLC d/b/a Relias Healthcare and all other Relias entities is David W. Donnell, Esq., of 609 Steed Road, Ridgeland, MS 39157. Healthcare Innovation Group, LLC d/b/a Relias Healthcare ("Relias") and all other Relias entities may be served upon its registered agent, David W. Donnell, Esq., by any means permitted under the Federal Rules of Civil Procedure.

4.

Defendant North Mississippi Medical Center is a Non-Profit Corporation with its principal place of business located at 830 S. Gloster, Tupelo, MS 38801. North Mississippi Medical Center may be served upon its registered agent, Bruce Toppin, Esq., by any means permitted under the Federal Rules of Civil Procedure.

5.

Defendant John Does A to Z are persons/entities who may have some responsibility for the damages claimed by the Plaintiff in this matter, whose identities are not yet known. If and when the identities of these additional persons/entities are determined, such persons/entity(s) will be added as a party defendant to this action, as appropriate.

6.

Defendant Jane Does A to Z are persons/entities who may have some responsibility for the damages claimed by the Plaintiff in this matter, whose identities are not yet known. If and when the identities of these additional persons/entities are determined, such persons/entity(s) will be added as a party defendant to this action, as appropriate.

**JURISDICTION AND VENUE**

7.

Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds One Million Dollars ($1,000,000.00).

8.

Plaintiff was a resident of the State of Texas when this cause of action accrued, and he is currently a resident of the State of Tennessee.

Defendant Phycon, Inc., at all times mentioned herein, is incorporated and doing business in Oklahoma City, Oklahoma.

Defendants Relias Healthcare and Defendant North Mississippi Medical Center, at all times mentioned herein, are incorporated and doing business in Tupelo, Lee County, in the State of Mississippi.

This cause of action took place in Tupelo, Lee County, Mississippi, and venue, therefore, is proper in this District pursuant to 28 U.S.C. § 1391.

**FACTS**

9.

Exhibit A, which is fully incorporated herein, is Baylor College of Medicine's offer for employment to Dr. Roger Starner Jones, Jr., MD (Dr. Jones), from February 2020.

10.

Later, in August and September of 2020 Dr. Jones was being credentialed to work as a physician for Baylor College of Medicine (BMC) when it was discovered that his Medicare billing privileges had been revoked over two years prior in 2018. This was a shock to Dr. Jones who had previously been unaware of the action of CMS in 2018 and who has never been under investigation by CMS or subject to any other inquiry by CMS.

11.

The revocation was devastating to Dr. Jones in that it meant that he could not work immediately for Baylor College of Medicine. Dr. Jones was subsequently issued a termination letter by Baylor College of Medicine as he could not be credentialed within the short time period set by Baylor College of Medicine. Exhibit B, which is fully incorporated herein, is BCM's termination for not meeting employment criteria "in that you were not eligible to be fully credentialed. The reason you could not be fully credentialed is, as you are aware, Novitas Solutions/Medicare revoked your Medicare privileges effective February 13, 2018 and established a re-enrollment bar for three years."

12.

Exhibit C, which is fully incorporated herein, is the Novitas revocation letter dated February 13, 2018, which Dr. Jones did not receive in 2018 as he did not live in Memphis at that time.

13.

Upon learning of Novitas revocation letter, Dr. Jones immediately hired other legal counsel to appeal the revocation. Exhibit D, which is fully incorporated herein, is a letter of representation and request for a hearing Mr. Trey Hendershot sent to the Administrative Law Judge for the Office of Medicare Hearing and Appeals on Dr. Jones' behalf in September 2020.

14.

Exhibit E, which is fully incorporated herein, includes Mr. Hendershot's letter to the Administrative Law Judge, Honorable Carolyn Cozad Hughes, dated December 28, 2020. Exhibit 1 of Exhibit E includes Dr. Jones' affidavit. In this affidavit Dr. Jones explains that he had no knowledge of the Novitas revocation and had no direct connection to the Relias group. Dr. Jones stated, "To my knowledge, I have never signed and dated an 855 Form identifying Relias as my practice manager, billing company or assigning Relias my rights to bill."

15.

Exhibit F, which is fully incorporated herein, is a fully executed Settlement Agreement between Dr. Jones and CMS. CMS withdrew the revocation of Medicare billing privileges and restored Dr. Jones to a position as if the revocation had never happened and agreed to work with Dr. Jones to allow him to re-enroll for Medicare privileges. Dr. Jones paid the Hendershot law firm

$97,098.87 for its work in seeking a hearing before the Office of Medicare Hearing and Appeals and, ultimately, securing a settlement of the matter.

16.

Exhibit G, which is fully incorporated herein, is a letter from Novitas dated April 7, 2021, rescinding the prior revocation and deactivating the two Mississippi Medicare Provider Transaction Numbers (PTAN) retroactive to March 2018.

17.

The trigger of Dr. Jones' CMS revocation was the submission of medical bills to CMS using his NPI number after his Mississippi license expired. Exhibit H, which is fully incorporated herein, is undersigned counsel's letter to Mr. Daniel Wolfe, attorney for the U.S. Department of Health and Human Services. Exhibit I, which is fully incorporated herein, is an email from Daniel Wolfe. Mr. Jurgenson is an associate of Mr. Hendershot, Dr. Jones' counsel for his CMS appeal.

18.

Exhibit J, which is fully incorporated herein, is Dr. Jones' FOIA request to CMS seeking information about Medicare charges submitted against PTANs from January 1, 2016 to present. Exhibit K, which is fully incorporated herein, is CMS' letter in response to Dr. Jones's FOIA request. Exhibit L, which is fully incorporated herein, is the spreadsheet which CMS provided to Dr. Jones in response to his FOIA. The charges at line 50-52 and 73, 74, 75, 76 and 77 under tab "H4-MS" for dates of service 08/20/2016 and 3/17/17 were the charges that led to the revocation because Dr. Jones voluntarily chose not to renew his Mississippi medical license after moving to Texas and his Mississippi medical license therefore expired in June 2016.

19.

In May 2021 Dr. Jones engaged undersigned counsel to make 1) make disclosure of the CMS revocation to the Texas and Tennessee medical boards and 2) request that the Texas Medical Board and/or proprietor of the National Physicians Database amend the verbiage regarding the granting of Dr. Jones' Texas medical license. Item 2 was deemed necessary as, at the time, it was believed that the Failure to Report Changes charge of the Novitas revocation letter of dated February 13, 2018 (see Exhibit C) was due to the verbiage of Dr. Jones' National Physicians Database report that was entered at the direction of the Texas Medical Board. Exhibit M, which is fully incorporated herein, is undersigned counsel's letter to the Texas Medical Board dated July 7, 2021.

20.

Exhibit N, which is fully incorporated herein, is a letter Dr. Jones received from the Texas Medical Board identifying two allegations that the Texas Medical Board is investigating regarding Dr. Jones' disclosure of the CMS revocation and the resulting termination by Baylor College of Medicine. Exhibit O, which is fully incorporated herein, is undersigned counsel's letter dated August 22, 2021, to the investigator of the Texas Medical Board, Andrea Kizzie. Exhibit P, which is fully incorporated herein, is Dr. Jones and undersigned counsel's correspondence with James Banfield of Baylor College of Medicine.

21.

Exhibit Q, which is fully incorporated herein, is undersigned counsel's letter to the Mississippi State Board of Medical Licensure dated August 22, 2021.

22.

Exhibit R, which is fully incorporated herein, is undersigned counsel's letter to the Tennessee Board of Medical Examiners dated August 22, 2021.

23.

Prior to filing this complaint, the undersigned counsel shared information with counsel for North Mississippi Medical Center and Relias Healthcare. Dr. Jones and the undersigned counsel have reviewed information from North Mississippi Medical Center and Relias Healthcare.

24.

On information and belief, undersigned counsel's sharing of information with North Mississippi Medical Center on August 2, 2021 was the first notice to North Mississippi Medical Center of the allegation of inappropriate billing tied to Dr. Jones. Dr. Jones was credentialed and privileged at North Mississippi Medical Center from June 8, 2015, till June 1, 2016. During that time Dr. Jones was an independent contractor and not an employee. North Mississippi Medical Center was not involved in billing the professional services for emergency department practitioners, including Dr. Jones, during the relevant time frame. Relias Healthcare is an independent organization that contracts with North Mississippi Medical Center to provide physicians and nurse practitioners to staff at the North Mississippi Medical Center's emergency department.

25.

On information and belief, undersigned counsel's sharing of information with Relias Healthcare on August 5, 2021, was the first notice to Relias Healthcare of the allegation of inappropriate billing tied to Dr. Jones. Relias Emergency Medicine Specialists of Tupelo, LLC entered a contract with North Mississippi Medical Center (NMMC) to provide coverage for NMMC's emergency department effective January 1, 2016. Relias Healthcare did not contract with or credential Dr. Jones for the emergency department after January 1, 2016.

26.

On information and belief, PhyCon, Inc. was the independent contractor who provided claim filing and billing services for the NMMC emergency department practice prior to Relias' contract with NMMC. When Relias Healthcare took over staffing the NMMC Emergency Department January 1, 2016, Relias also contracted with PhyCon as an independent contractor to handle its billing services. Phycon is no longer Relias' independent billing contractor, and the only connection it has to Phycon relates back to the contract that was in place in 2016-17. Relias Healthcare does not have records of Dr. Jones providing any services through/for Relias or in the NMMC Emergency Department during its tenure much less any records of requests for PhyCon to bill for such claims. PhyCon (not Relias Healthcare) maintains all the records related to Relias' claim filings.

27.

North Mississippi Medical Center has represented to undersigned counsel that from January 1, 2016, to June 1, 2016, Dr. Jones was an independent contractor with Relias Healthcare.

28.

CMS-855R Reassignment of Medicare Benefits form is attached to Exhibit 7 to Exhibit E, which is fully incorporated herein. Page 3 of the CMS-855R Reassignment of Medicare Benefits form demonstrates a post-date added by Dr. Jones' signature and seemingly the signature of Luke West or a signature seemingly purporting to be Luke West's. The date entered on page 3 is "02-18-2016."

29.

Dr. Jones does not remember signing the CMS-855R Reassignment of Medicare Benefits form and who asked him to sign the form.

30.

Dr. Jones does not remember signing the CMS-855I Medicare Enrollment Application form and who asked him to sign the form. See Exhibit E, internally referred as Ex. 6 at page 35 of the 133 page document. Page 6 of this exhibit reflects that Dr. Jones' Mississippi license would expire on June 30, 2016. The date entered on page 26 of this exhibit is also "02-18-2016" and is in the apparent same script as the date entered on CMS-855R Reassignment of Medicare Benefits form.

31.

According to the FOIA results, Exhibit K, the billing NPI for the 2016 and 2017 claims, the charges at line 50-52 and 73, 74, 75, 76 and 77 under tab "H4-MS" for dates of service 08/20/2016 and 3/17/17 is 1841664661. The NPESS NPI Registry reflects that the billing NPI of 1841664661 is associated with "RELIAS EMERGENCY MEDICINE SPECIALISTS OF TUPELO LLC." See https://npiregistry.cms.hhs.gov/registry/provider-view/1841664661.On information and belief there were medical records at North Mississippi Medical Center that reflect Dr. Jones seeing patients in the North Mississippi Medical Center Emergency Department on 08/20/2016 and 03/17/2017. Such medical records would have been the basis of the charges submitted to Medicare.

32.

Phycon caused the CMS-855I Medicare Enrollment Application and the CMS-855R Reassignment of Medicare Benefits forms to be submitted to Centers for Medicare & Medicaid Services (CMS), a federal agency within the United States Department of Health and Human Services that administers the Medicare program and works in partnership with state governments to administer Medicaid, the Children's Health Insurance Program, and health insurance portability standards.

**GOOD FAITH**

33.

      The revocation of Medicare privileges from 2018 was not discovered by Dr. Jones until September 2, 2020, when he was going through the credentialing process to work for Baylor College of Medicine. Dr. Jones finally received the Novitas letter dated February 13, 2018, on September 3, 2020. Dr. Jones did not learn specific details implicating the Defendants in this matter until later in October 2020. Various Mississippi statutes and judicial authorities preserve Dr. Jones' claims as not time-barred pursuant to the various statutes of limitations. Dr. Jones and undersigned counsel have closely examined the numerous documents associated with his revocation of Medicare privileges. Dr. Jones is only interested in pursuing the claims below against the entities which are shown to have caused or contributed to the revocation of Dr. Jones' billing privileges and the subsequent consequences of the revocation pursuant to applicable civil tort law. Dr. Jones would have preferred to continue pre-suit sharing of information with the various defendant to ascertain with certainty what led to the filing of false claims to Medicare and, specifically, the party or parties who are responsible. However, the statute of limitations for certain torts under Mississippi law, including defamation, being only one year, and the uncertainty of when a court might determine when Dr. Jones discovered the Novitas revocation prompted Dr. Jones to proceed with immediate filing of this complaint to preserve Dr. Jones' ability to pursue his claim for defamation against the appropriate party or parties who caused or contributed to the revocation of Dr. Jones' billing privileges and the subsequent consequences of the revocation.

## **DEFAMATION**

34.

      Plaintiff re-asserts and re-alleges each of the allegations contained in paragraphs 1 to 33 of this Complaint, as if fully set forth herein.

35.

      Defendants filed Medicare charges against PTANs 482207YYE and 482207ZSXX using Dr. Jones' NPI number for dates in which 1) no patient had been seen or treated, 2) no medical records existed, 3) Dr. Jones was not credentialed at North Mississippi Medical Center, and 4) Dr. Jones had no active Mississippi medical license. These charges are listed in Exhibit K under tab "H4 - MS" at lines 50-52 and 73, 74, 75, 76 and 77. These charges will be referred to as the "false claims."

36.

      The false claims that defendants submitted constituted false statements which had the capacity to injure Dr. Jones' reputation, specifically his privilege to bill for Medicare charges.

37.

      Defendants had no privilege, right, obligation, duty of any sort to submit the false claims.

38.

      Defendants' submission of the false claims was the result of negligence, negligence per se, and/or gross negligence.

39.

Defendants knew or through the exercise of reasonable care should have known that submission of false claims would result in special harm to Dr. Jones and also that false claims would result to impute Dr. Jones of a want of integrity and/or capacity, whether mental or pecuniary, in the conduct of Dr. Jones' profession and business.

40.

Defendant's submission of the false claims gave the impression that Dr. Jones was seeking to defraud the Centers for Medicare & Medicaid Services by billing for services not provided and practicing medicine in Mississippi without an active medical license.

41.

Defendant' false claims imputed Dr. Jones for violation of multiple Federal and State statutes and administrative rules, including, but not limited to, 18 U.S.C. § 1347 Health care fraud, the False Claims Act ("FCA") 31 U.S.C. § 3729 and Miss. Code Ann. § 97-23-43 (Profession; practicing without a license).

42.

Defendant's submission of the false claims was the cause of the revocation of Dr. Jones' Medicare billing privileges and his subsequent inability to be credentialed to work as an Emergency Medicine physician for Baylor College of Medicine in Houston, Texas. Further, due to defendants' negligent and/or grossly negligent actions, Dr. Jones is under investigation by the Texas Medical Board for 1) disciplinary action by peers and 2) unprofessional conduct by the Texas Medical Board.

**NEGLIGENCE, NEGLIGENCE PER SE AND GROSS NEGLIGENCE**

43.

Plaintiff re-asserts and re-alleges each of the allegations contained in paragraphs 1 to 42 of this Complaint, as if fully set forth herein.

44.

Defendants had a duty to file charges to Medicare in a reasonably prudent manner.

45.

Defendants breached that duty by submitting false claims under Dr. Jones' NPI number.

46.

Defendants' false claims are in violation of multiple Federal and State statutes and administrative rules, including, but not limited to, 18 U.S.C. § 1347 Health care fraud, the False Claims Act ("FCA") 31 U.S.C. § 3729 and Miss. Code Ann. § 97-23-43 (Profession; practicing without a license) and, therefore, is liable in tort without proof of lack of due care.

47.

Defendants' breach was the proximate cause of Dr. Jones' revocation of Dr. Jones' Medicare billing privileges and his subsequent inability to be credentialed to work as an Emergency Medicine physician for Baylor College of Medicine in Houston, Texas. Further, Defendants' breach was the proximate cause of the investigation by the Texas Medical Board for 1) disciplinary action by peers and 2) unprofessional conduct by the Texas Medical Board.

48.

Defendants' submission of these false claims was unconscionable, was done with a complete lack of care, constituted a fraud, and resulted in significant damages to Dr. Jones for which the independent tort of gross negligence is appropriate.

## **RES IPSA LOQUITOR**

49.

Plaintiff re-asserts and re-alleges each of the allegations contained in paragraphs 1 to 48 of this Complaint, as if fully set forth herein.

50.

The defendants had exclusive control over the management of the filing of false claims to Medicare which caused revocation of Dr. Jones' Medicare billing privileges and the subsequent consequences of the revocation.

51.

The revocation of Dr. Jones' Medicare billing privileges and the subsequent consequences of the revocation would not have occurred if the Defendants had used proper care.

52.

Dr. Jones' injuries from the filing of the false claims and subsequent revocation of Dr. Jones' Medicare billing privileges and other consequences of the revocation are not the result of Dr. Jones' voluntary act.

## **INVASION OF PRIVACY**

53.

Plaintiff re-asserts and re-alleges each of the allegations contained in paragraphs 1 to 52 of this Complaint, as if fully set forth herein.

54.

Defendants' false claims constituted an intentional intrusion upon the solitude or seclusion of Dr. Jones. Such an intrusion constituted a substantial interference with Dr. Jones' life and, specifically, his professional reputation, professional standing, and ability to practice medicine, that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object.

55.

Defendants' act of filing the false claims appropriated Dr. Jones' identify, specially his NPI number for an unpermitted use. The filing of the false claims was without consent and was for use in a commercial enterprise.

56.

Defendants' false claims held Dr. Jones to the public eye in a false light. Defendants had knowledge of the falsity of the subject charges or was reckless in the disregard of the truth of the subject charges.

## BREACH OF FIDUCIARY DUTY

57.

Plaintiff re-asserts and re-alleges each of the allegations contained in paragraphs 1 to 56 of this Complaint, as if fully set forth herein.

58.

Defendants owed Dr. Jones a fiduciary duty in that defendants and Dr. Jones shared a goal in each other's business in that patient visits to the emergency department at the North Mississippi Medical Center would be correctly documented and such medical records would underlie correct, appropriate and lawful billing of patients and third-parties, specifically Centers for Medicare & Medicaid Services, pursuant to all applicable Federal and State statues and administrative codes.

59.

Further, Dr. Jones justifiably placed confidence or trust in Defendants' fidelity to submit billing properly, legally, and correctly for services performed by Dr. Jones.

60.

Further, Defendants exercised effective control over the submission of charges submitted to patients and third-parties, specifically Centers for Medicare & Medicaid Services.

## BREACH OF CONTRACT

61.

Plaintiff re-asserts and re-alleges each of the allegations contained in paragraphs 1 to 60 of this Complaint, as if fully set forth herein.

62.

Upon information and belief Defendants had contractual relationships regarding access to the medical record of North Mississippi Medical Center, credentialing of physician, physicians assistants and nurse practitioners who worked at North Mississippi Medical Center, and the billing of medical services of the Emergency Medicine physicians, physicians assistants and nurse practitioners who worked at North Mississippi Medical Center.

63.

Upon information and belief such contract terms are expressly broad enough to include Dr. Jones as one of a specified class as a physician for North Mississippi Medical Center in the contract and Dr. Jones, as a physician credential by North Mississippi Medical Center, was within the intent of the terms of the contract, and Defendants had a substantial and articulate interest in the welfare of Dr. Jones in respect to the subject of the contract.

64.

Upon information and belief Defendants breached the terms of its various contracts and is liable to Dr. Jones, as an intended third-party beneficiary.

## **DAMAGES**

65.

Plaintiff re-asserts and re-alleges each of the allegations contained in paragraphs 1 to 64 of this Complaint, as if fully set forth herein.

66.

As a proximate result of all the causes of action described hereinabove, Plaintiff has suffered damages as described hereinabove, and additional damages, including, but not limited to, actual economic damages, special damages and general damages, and expenses to be proven at the trial of this matter.

67.

As a proximate result of all the causes of action described hereinabove, Plaintiff has suffered noneconomic damages, including, but not limited to, inconvenience, worry, injury to reputation, humiliation, embarrassment.

68.

As a proximate result of various causes of action described hereinabove, Plaintiff is entitled to punitive damages pursuant to Miss. Code Ann. § 11-1-65 and other applicable law.

69.

As a proximate result of the defamation cause of action described hereinabove, Plaintiff is entitled to any lost earnings, future lost earning capacity, and other lost business or economic opportunities that he/she suffered or is likely to suffer as a result of the defamatory statement.

70.

Jury trial demanded.

**WHEREFORE**, Plaintiff sues and demands judgment of and from Defendants as follows:

a. $1,000,000.00 in damages; and

      b.      Punitive damages for the defamatory, intentional and/or grossly negligent conduct of the Defendants in submitting the subject charges to Medicare that the Defendant knew or reasonably should have known were false claims; and

      c.      All expenses and costs incurred in the prosecution of this action, including, but not limited to, reasonable attorneys fees;

      d.      such further specific or general relief to which the Plaintiffs are entitled.

      Respectfully submitted,

      **ROGER STARNER JONES, JR., MD**

      BY:    /s Henderson M. Jones

      HENDERSON M. JONES (MSB #101818)

OF COUNSEL:

HENDERSON M. JONES, MD, JD
2520 S. 3RD STREET, UNIT 414
LOUISVILLE, KY 40208
TELEPHONE: 662.586.1158
hendersonjones@gmail.com
*Attorney for Plaintiff*