**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**ROGER STARNER JONES, JR., MD**                                                    **PLAINTIFF**

**V.**                                                                          **NO. 1:21-CV-136-DMB-DAS**

**PHYCON, INC., et al.**                                                          **DEFENDANTS**

## OPINION AND ORDER

Dr. Roger Starner Jones alleges that Phycon, Inc., and Relias Emergency Medicine Specialists of Tupelo, LLC, used his Medicare NPI number without his consent to file false Medicare claims, which caused the loss of his Medicare billing privileges. Phycon and Relias have filed motions to dismiss. Because Jones' allegations are insufficient in some respects but not others, the motions will be granted in part and denied in part, and Jones will be allowed the opportunity to seek leave to amend.

### I
### Procedural History

On August 30, 2021, Roger Starner Jones, Jr., MD, filed a complaint in the United States District Court for the Northern District of Mississippi against Phycon, Inc.; "Healthcare Innovation Group, LLC d/b/a Relias Healthcare and other related Relias Entities;" North Mississippi Medical Center; "John Does A-J, and Jane Does A-J." Doc. #1. The complaint, which invokes diversity jurisdiction, alleged multiple claims related to the revocation of Jones' Medicare privileges. *Id.* at PageID 2, 8–11. Before service on any defendant occurred, Jones filed an amended complaint on September 24, 2021, dropping North Mississippi Medical Center as a defendant. Doc. #5.

Both remaining defendants received multiple extensions to respond to the amended

complaint. *See* Docs. #22, #25. On January 14, 2022, before any responsive pleadings were filed, Jones filed a second amended complaint against Phycon, Relias Emergency Medicine Specialists of Tupelo, LLC, "John Does A-J, and Jane Does A-J."[1] Doc. #26. The second amended complaint, which seeks actual and punitive damages, asserts claims titled: (1) "Defamation;" (2) "Negligence, Negligence Per Se, and Gross Negligence;" (3) "Res Ipsa Loquitor;"[2] (4) "Invasion of Privacy;" (5) "Breach of Fiduciary Duty;" and (6) "Breach of Contract."[3] *Id.* at PageID 607–12.

On January 20, 2022, Phycon filed a Rule 12(b)(6) motion to dismiss[4] the claims against it for defamation, breach of contract, breach of fiduciary duty, and invasion of privacy. Doc. #28. The next day, Relias filed a motion to dismiss all claims against it pursuant to Rule 12(b)(6), and for judgment on the pleadings on the issue of punitive damages pursuant to Rule 12(c). Doc. #31. Both motions are fully briefed. Docs. #29, #45, #46 (Phycon's motion); Docs. #32, #43, #47 (Relias' motion).

---

[1] The second amended complaint was filed without the Court's leave. *See* Fed. R. Civ. P. 15(a) (allowing amendment "once as a matter of course" within specific deadlines and requiring "the opposing party's written consent or the court's leave" for all other amendments). Because no defendant challenges the second amended complaint as being filed without leave and both defendants reference the second amended complaint as controlling, the Court will treat it as the operative pleading. *See Jefferson v. Broadnax*, No. 3:12-cv-4638, 2013 WL 3455707, at *1 n.1 (N.D. Tex. July 9, 2013) ("The Court treats Plaintiff's First Amended Compliant … as the operative pleading in this case. Although filed without leave of court, [the defendant] tacitly consented to the amendment by specifically addressing and reurging its motion to dismiss in response to the amended complaint."); Doc. #31 (Relias' motion to dismiss specifically addressing the second amended complaint); Doc. #46 (Phycon's reply indicating "it incorrectly identif[ied] its Partial Motion to Dismiss as directed towards Plaintiff's First Amended Complaint" and "direct[ing its] Rebuttal and its Partial Motion to Dismiss at the Second Amended Complaint").

[2] Although listed as a separate claim, "the doctrine of res ipsa loquitur … permits negligence to be inferred in certain situations." *Darling Ingredients Inc. v. Moore*, 337 So. 3d 214, 216 (Miss. 2022).

[3] There is a separate heading titled "Good Faith" but it only contains allegations about when Jones discovered his Medicare privileges were revoked and when he discovered who such implicated. Doc. #26 at PageID 606–07.

[4] While Phycon's motion references the "First Amended Complaint," the Court treats the motion as directed to the second amended complaint because (1) it was filed after the filing of the second amended complaint, (2) Phycon's reply indicates its intent to move for dismissal of the second amended complaint, (3) the only difference between the amended and second amended complaints is how Relias is named, and (4) Jones' response to the motion "assum[es] that [Phycon] intended to request the partial dismissal of [his] Second Amended Complaint." Doc. #44 at 1 n.1; *see Price v. Tunica Cnty. Sch. Dist.*, No. 4:20-cv-16, 2020 WL 7081597, at *2 (N.D. Miss. Dec. 3, 2020) ("[T]he filing of an amended complaint will ordinarily moot a pending motion to dismiss unless the amended complaint 'on its face' fails to address the alleged defects identified in the motion to dismiss.").

## II
## Standard

Motions to dismiss under Rule 12(b)(6) and motions for judgment on the pleadings pursuant to Rule 12(c) are analyzed using the same standard. *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022). To satisfy this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (internal quotation marks omitted). A court must "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff" but it does "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306–11 (5th Cir. 2021). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022).

## III
## Factual Background

[Dr. Starner] Jones was credentialed and privileged at North Mississippi Medical Center from June 8, 2015, till June 1, 2016. During that time Dr. Jones was an independent contractor and not an employee. North Mississippi Medical Center was not involved in billing the professional services for emergency department practitioners, including Dr. Jones, during the relevant time frame. …

… Relias … entered into a contract with North Mississippi Medical Center (NMMC) to provide coverage for NMMC's emergency department effective January 1, 2016. Relias … did not contract with or credential Dr. Jones for the emergency department after January 1, 2016.

… PhyCon, Inc. was the independent contractor who provided claim filing and

> billing services for the NMMC emergency department practice prior to Relias[']
> … contract with NMMC. When Relias … took over staffing the NMMC
> Emergency Department … [it] also contracted with PhyCon as an independent
> contractor to handle its billing services.

Doc. #26 at PageID 604. "Jones voluntarily chose not to renew his Mississippi medical license after moving to Texas and his Mississippi medical license … expired in June 2016." *Id.* at PageID 603.

In February 2020, Baylor College of Medicine offered Jones a position as an assistant professor in the emergency medicine department "contingent upon completion of credentialing." Doc. #26-1. While Jones was being credentialed for the position in August and September 2020, "it was discovered that his Medicare billing privileges had been revoked over two years prior in 2018." Doc. #26 at PageID 602. A letter had been sent to Jones at an address in Memphis informing him of the revocation[5] but Jones "did not receive [it] in 2018 as he did not live in Memphis at that time." *Id.* As a result of the revocation, "Jones was … issued a termination letter by Baylor … as he could not be credentialed within the short time period set." *Id.*

After being alerted by Baylor that "Novitas Solutions/Medicare revoked [his] Medicare privileges effective February 13, 2018," Jones hired "legal counsel to appeal the revocation." *Id.* Jones learned "[t]he trigger" of the Centers for Medicare & Medicaid Services ("CMS") revocation was "the submission of medical bills to CMS using his NPI number after his Mississippi license expired."[6] *Id.* at PageID 603. Specifically, charges "for dates of service 8/20/2016 and 3/17/17 … led to the revocation." *Id.* "The NPRESS NPI Registry reflects that the billing NPI [for these charges] is associated with 'RELIAS EMERGENCY MEDICINE

---

[5] Doc. #26-3.

[6] According to Phycon, "[a]n NPI is a 10-digit numeric identifier" which "does not carry information about a particular health care provider (e.g., the state where the provider practices, the type of provider someone is, or the provider's specialization), and a provider's NPI will not change, even if the provider's other information changes." Doc. #29 at 5 n.3.

SPECIALISTS OF TUPELO LLC.'" *Id.* at PageID 606. But "no medical records exist at [NMMC] that reflect Dr. Jones seeing patients in the [NMMC] Emergency Department on 8/20/2016 and 3/17/2017[ and s]uch medical records would have been the basis of the charges submitted to Medicare." *Id.* at PageID 606.

In his appeal of the revocation, Jones "explain[ed] that he had no knowledge of the Novitas revocation and had no direct connection to the Relias group" and "never signed and dated an 855 Form identifying Relias as [his] practice manager, billing company or assigning Relias [his] rights to bill." *Id.* Rather, "Relias fraudulently posted-dated [sic] and filed these 855 Forms without his knowledge or consent." Doc. #26-5 at PageID 683. "Phycon caused the CMS-855I Medicare Enrollment Application and the CMS-855R Reassignment of Medicare Benefits forms to be submitted to [CMS] …." Doc. #26 at PageID 606. Jones "does not remember signing" either form and the CMS-855R "form demonstrates a post-date added by [his] signature and seemingly the signature of Luke West or a signature seemingly purporting to be Luke West's."[7] *Id.* at PageID 605.

As the result of a settlement agreement between Jones and CMS, CMS "withdrew the revocation of Medicare billing privileges and restored Dr. Jones to a position as if the revocation had never happened and agreed to work with [him] to allow him to re-enroll for Medicare privileges." *Id.* at PageID 602–03. Jones paid $97,098.87 in legal fees to secure the settlement. *Id.* at PageID 603.

"In May 2021 Dr. Jones engaged [legal] counsel to … 1) make disclosure of the CMS revocation to the Texas and Tennessee medical boards and 2) request that the Texas Medical Board and/or proprietor of the National Physicians Database amend the verbiage regarding the

---

[7] West "is Relias's CEO." Doc. #26-5 at PageID 681.

granting of [his] Texas medical license." *Id.* On July 30, 2021, the Texas Medical Board informed Jones it was investigating a complaint against him related to his "Medicare billing privileges being revoked by CMS in 2018, and subsequent settlement in March 2021, as well as [his] termination by Baylor College of Medicine." Doc. #26-14.

**IV**
**Phycon's Motion**

Phycon seeks dismissal of Jones' claims for defamation, breach of contract, breach of fiduciary duty, and invasion of privacy. Doc. #28 at 2.

### A. Defamation

For his defamation claim, Jones alleges in the second amended complaint that "[t]he false claims that defendants submitted constituted false statements which had the capacity to injure [his] reputation, specifically his privilege to bill Medicare charges;" the defendants "had no privilege, right, obligation, duty of any sort to submit the false claims;" the defendants' "submission of the false claims was the result of negligence, negligence per se, and/or gross negligence;" and the "false claims imputed [him] for violation of multiple Federal and State statutes and administrative rules." Doc. #26 at PageID 607–08.

Phycon argues Jones' defamation claim should be dismissed because he "does not allege that Phycon's submission of Medicare claims themselves contained clear and unmistakable defamatory remarks that would tend to injure [his] reputation;" "[r]ather, [Jones] is alleging that the Medicare claims, through innuendo, speculation, and conjecture, gave the impression that [he] was seeking to defraud the Medicare system." Doc. #29 at 8–9. Jones responds that "it is sufficiently alleged that the false claims submitted to Medicare were clearly and unmistakably defamatory by virtue of imputing violation of federal and state laws and by virtue of the revocation of [his] Medicare billing privileges." Doc. #45 at 4. Phycon replies that Jones "fails

6

to address the fact that Medicare claim submissions, by their nature, can never impute fraud or violations of law" because they "use codes correlating to medical information" making it "impossible for Phycon to use Medicare claim codes to clearly and unmistakably accuse [Jones] of fraud and violations of law, because [CMS] has not created codes that correspond to accusations of fraud or legal violations." Doc. #46 at 2.

> To establish a defamation claim under Mississippi law, a plaintiff must prove:
>
> (1) a false and defamatory statement concerning plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; (4) and either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Short v. Versiga*, 283 So. 3d 182, 185 (Miss. 2019) (alterations omitted). "The defamation must be clear and unmistakable from the words themselves and not be the product of innuendo, speculation or conjecture." *Perkins v. Littleton*, 270 So. 3d 208, 213 (Miss. Ct. App. 2018) (quoting *Journal Publ'g Co. v. McCullough*, 743 So. 2d 352, 360 (Miss. 1999)). "If the hearer must struggle to see how and whether they defame, by definition the words are not defamatory in law." *Id.*

Jones' defamation claim is based on Phycon's alleged submission of charges to Medicare using his NPI number. At most, these charges amount to a statement that Jones performed medical care on the dates in question. While there is no dispute these statements were false, there is nothing "inherently defamatory" about the statements to support a defamation claim. *See id.* at 216–17 (defamation claim based on statement that plaintiff "conspired to bring a pending lawsuit to the attention of the newspaper and the public" was not defamatory because "[o]n its face, [it did] not accuse [the plaintiff] of any criminal activity[ n]or … clearly and unmistakably imply that [he] committed a crime").

**B. Breach of Contract**

The second amended complaint alleges that "[u]pon information and belief," Relias and Phycon "had contractual relationships regarding access to the medical records of [NMMC], credentialing of physicians, physicians assistants and nurse practitioners who worked at [NMMC], and the billing of medical services of the Emergency Medicine physicians, physicians assistants and nurse practitioners who worked at [NMMC];" the "contract terms are expressly broad enough to include Dr. Jones as one of a specified class as a physician for [NMMC] in the contract and Dr. Jones … was within the intent of the terms of the contract, and Defendants had a substantial and articulate interest in the welfare of Dr. Jones in respect to the subject of the contract;" and the defendants "breached the terms of its various contracts and is [sic] liable to Dr. Jones, as an intended third-party beneficiary." Doc. #26 at PageID 611.

Phycon argues Jones "does not plausibly allege that he was a third-party beneficiary, as he cannot specifically allege that he is referenced or alluded to in the contract(s) in question." Doc. #29 at 10. In response, Jones argues that the second amended complaint "alleges … that a contract between Relias and Phycon was entered into for the benefit of third party physicians … and referenced the billing of medical services of the Emergency Medicine physicians" and "that from January 1, 2016, to June 1, 2016, during the time period Relias contracted with Phycon for billing services, [Jones] was listed as an independent contractor with Relias." Doc. #45 at 4. Phycon replies that Jones has failed to plead sufficient factual content to "allow the court to reasonably infer that [he] was an intended third-party beneficiary of the contract between [it] and Relias, as he does not even attempt to demonstrate why such a contract would reference or otherwise benefit [him]." Doc. #46 at 3–4.

To establish a breach of contract, the plaintiff must show "(1) the existence of a valid and

binding contract and (2) that the defendant has broken, or breached it." *Mortera v. State Farm Fire & Cas. Co.*, 561 F. Supp. 3d 684, 690 (S.D. Miss. 2021) (internal quotation marks omitted) (quoting *Bus. Commc'ns., Inc. v. Banks*, 90 So. 3d 1221, 1224–25 (Miss. 2012)). Generally, "a party may only recover damages for breach of contract if there is privity of contract between the damaged party and the party sought to be held liable for the breach." *Id.* But "a stranger to a contract may bring a breach of contract claim as a third-party beneficiary" "when the alleged broken condition was placed in the contract for his direct benefit." *Id.* at 692. If the benefits of the contract "flow directly to the contracting party and not to the third party," the third party is an incidental beneficiary and "does not acquire any rights under the contract." *Id.* at 693.

> The Mississippi Supreme Court employs the following analysis to determine third-party beneficiary status:
>
> (1) When the terms of the contract are expressly broad enough to include the third party either by name or as one of a specified class, and (2) the said third party was evidently within the intent of the terms so used, the said third party will be within the benefits, if (3) the promisee had, in fact, a substantial and articulate interest in the welfare of the said third party in respect to the subject of the contract.

*Id.* at 692–93 (quoting *Simmons Hous., Inc. v. Shelton*, 36 So. 3d 1283, 1286 (Miss. 2010)).

Jones' second amended complaint contains nothing more than a conclusory statement regarding the existence of "contractual relationships" followed by a recitation of the elements of the third-party beneficiary analysis without any supporting factual details or even the contract itself to show that Jones was anything more than an incidental beneficiary. Such is insufficient to state a claim for breach of contract. *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021) ("[A] complaint must do more than recite the elements of a cause of action and must be supported by more than conclusory statements.").

### C. Breach of Fiduciary Duty

The second amended complaint alleges the defendants "owed Dr. Jones a fiduciary duty

in that defendants and Dr. Jones shared a goal in each other's business in that patient visits to the emergency department at [NMMC] would be correctly documented and such medical records would underlie correct, appropriate and lawful billing of patients and third-parties."  Doc. #26 at PageID 610.  Phycon argues Jones' breach of fiduciary duty claim should be dismissed because Jones "himself denies that he ever formed a contractual relationship or a relationship of trust and reliance with Phycon."  Doc. #29 at 12.  Jones argues that he has adequately alleged a fiduciary relationship because he "clearly set forth what he alleges as the shared goals of his and Phycon's commercial activities," he "justifiably placed trust in those who handled the Medicare billing for [NMMC] during the period of time in question," and "Relias and Phycon exercised effective control over the physicians … with regard to the submission of charges to third-parties such as CMS."  Doc. #45 at 5.  Phycon replies that Jones "fails to plausibly allege that his relationship with [it] rose beyond that of an arm's-length business transaction."  Doc. #46 at 5.

"It is axiomatic that a fiduciary duty must exist before a breach of the duty can occur." *Gibson v. Williams, Williams, & Montgomery, P.A.*, 186 So. 3d 836, 852 (Miss. 2016) (internal quotation marks omitted).  "In Mississippi, a fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed."  *Id.*  "One of the key elements of a fiduciary relationship is the fiduciary's control of the supervised party's property, and that things of value such as land, monies, a business, or other things of value must be possessed or managed by the dominant party."  *Univ. Nursing Assocs., PLLC v. Phillips*, 842 So. 2d 1270, 1275 (Miss. 2003).

Here, the second amended complaint alleges Jones "was credentialed and privileged" at NMMC but "had no direct connection to the Relias group" and Relias "did not contract with or

credential [him] for the emergency department" after it entered a contract with NMMC.  Doc. #26 at PageID 602, 604–05.  And while the second amended complaint alleges both NMMC and Relias contracted with Phycon for claim filing and billing services, it does not allege that Jones had a relationship with Phycon.  *Id.* at PageID 605.  Nor does it allege that Jones gave Phycon control over his billing.  In the absence of such allegations, Jones has failed to allege a fiduciary relationship sufficient to support his breach of fiduciary duty claim against Phycon.

### D.  Invasion of Privacy

Phycon asks the Court to "dismiss all of [Jones'] invasion-of-privacy claims" as "legally insufficient."  Doc. #29 at 13.

Under Mississippi law, "[i]nvasion of privacy is comprised of four distinct and separate subtorts."  *Raddin v. Manchester Educ. Found., Inc.*, 175 So. 3d 1243, 1251 (Miss. 2015).  Three of the four are at issue here:  (1) "intentional intrusion upon the solitude or seclusion of another;" (2) "appropriation of another's identity for an unpermitted use;" and (3) "[h]olding another to the public eye in false light."[8]  *Id.*

#### 1.  Intrusion on seclusion

The second amended complaint alleges the "false claims constituted an intentional intrusion upon the solitude or seclusion of Dr. Jones."  Doc. #26 at PageID 610.  Phycon argues Jones "cannot plausibly allege that [it] invaded a private seclusion, as submission of Medicare claims are public filings, and he consented to the release of the information contained therein."  Doc. #29 at 13–14.  Jones responds that the submission of "false claims to Medicare constituted an intentional intrusion upon his solitude or seclusion and, more specifically, resulted in the complete upheaval of his personal life, professional reputation and professional standing."  Doc.

---

[8] The fourth, "public disclosure of private facts," is not at issue in this case.

#45 at 6. Phycon replies that Jones' "attempt[] to argue that he was damaged because Phycon published [his] publicly-available [NPI number] in a dishonest manner so as to defame him" is a "claim for defamation or false light, not intrusion upon seclusion." Doc. #46 at 6.

"[T]o recover for an invasion of privacy [for intrusion upon seclusion], a plaintiff must … show[] a substantial interference with his seclusion of a kind that would be highly offensive to the ordinary, reasonable man, as the result of conduct to which the reasonable man would strongly object." *Plaxico v. Michael*, 735 So. 2d 1036, 1039 (Miss. 1999). Jones did not cite— and the Court has not found—any authority applying this invasion of privacy theory to the making of statements about a person which impacted the person's personal life. Rather, as observed in § 652B of the Restatement (Second) of Torts:[9]

> The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home. It may also be by the use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs window with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents.

Because the second amended complaint does not allege any facts which constitute substantial interference with Jones' seclusion, his intrusion upon seclusion claim fails.

## 2. Appropriation of identity

The second amended complaint alleges that the "act of filing the false claims appropriated Dr. Jones' identity, specifically his NPI number for an unpermitted use[ and t]he filing of the false claims was without consent and was for use in commercial enterprise." Doc.

---

[9] The Mississippi Supreme Court has cited the Restatement of Torts when analyzing these types of claims. *See Candebat v. Flanagan*, 487 So. 2d 207, 209 (Miss. 1986).

#26 at PageID 610.  Phycon argues dismissal of this claim is warranted because Jones "fails to plausibly allege that [it] received publicity-based benefit, commercial benefit, or other benefit from the alleged misappropriation of identity" and "such appropriation of identity was permitted."  Doc. #29 at 14–16.  Jones argues that because the second amended complaint alleges "Phycon utilized [his] Medicare NPI number without [his] consent for the submission of false Medicare billing claims[, i]t must be reasonably inferred … that the false Medicare claims were submitted for a commercial purpose regardless of whether the claims were paid or denied."  Doc. #45 at 6.  Phycon replies that Jones "fails to address the fact that a sophisticated billing services entity such as [it] would understand that submitting false Medicare claims under the NPI number for an unlicensed doctor would be rejected without any possibility of disbursement of proceeds" and "fails to plausibly allege that use of his 'identity' was unpermitted."  Doc. #46 at 7.

"In order to prevail on a claim based on appropriation of one's likeness for commercial gain, a plaintiff must show that the defendant: (1) appropriated his name or likeness, (2) without consent, (3) for use in a commercial enterprise."  *Brasel v. Hair Co.*¸ 976 So. 2d 390, 392 (Miss. Ct. App. 2008).  Phycon does not dispute that Jones' NPI number is akin to his name or likeness.  But contrary to Phycon's argument that Jones "either implicitly or explicitly consented to Relias and permitted third-parties, including [it] to use his NPI number for the purposes of submitting Medicare claims,"[10] Jones alleges in the second amended complaint that he "had no direct connection to the Relias group" and did not assign his billing rights to Relias but rather Phycon caused the Medicare forms assigning his billing rights to be submitted to CMS.  Doc. #26 at PageID 602, 606.  And while Phycon focuses on its lack of a benefit from submitting the claims,

---

[10] Doc. #29 at 16.

Jones need only allege (as he did here) that his identity was "*use[d]* in a commercial enterprise." *Brasel*, 976 So. 2d at 392 (emphasis added). For these reasons, the appropriation-of-identity allegations raised in the second amended complaint are sufficient to survive at this stage.

### 3. False light

The second amended complaint alleges that the defendants' "false claims held Dr. Jones to the public eye in a false light." Doc. #26 at PageID 610. Phycon argues Jones "fails to plausibly allege that [its] alleged submittal of false Medicare claims placed him in a false light, since he admits that his own inaction contributed to the revocation of his Medicare privileges." Doc. #29 at 17. Jones responds that he "sufficiently alleged the submission of false Medicare claims by Phycon" "at a time he was not licensed in Mississippi," leading to the revocation of his CMS billing privileges and Baylor's employment offer. Doc. #45 at 7. Phycon replies that because Jones "fail[ed] to timely appeal the revocation because he failed to update his address with CMS" and it had "no ability to appeal [his] Medicare revocations for him, … he is the ultimate cause of his Medicare revocation and any supposed appearance as a defrauder of Medicare." Doc. #46 at 8.

> To recover for false light invasion of privacy, [a plaintiff] must demonstrate (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Hays v. LaForge*, 333 So. 3d 595, 608 (Miss. Ct. App. 2022) (quoting *Cook v. Mardi Gras Casino Corp.*, 697 So. 2d 378, 382 (Miss. 1997)).

While Jones alleges the "false claims held [him] to the public eye in a false light," as discussed above regarding the defamation claim, the charges themselves simply amount to statements that Jones performed medical services on the dates in question. Because such

14

statements alone are not considered highly offensive, Jones' false light claim fails. *See Mitchell v. Random House, Inc.*¸ 703 F. Supp. 1250, 1259–60 (S.D. Miss. 1988) (false light claim failed where plaintiff could "only rely on innuendo, speculation or conjecture to make out her case") (quoting *Prescott v. Bay St. Louis Newspapers, Inc.*, 497 So. 2d 77, 79 (Miss. 1986)).

### E.  Summary

The second amended complaint fails to state a claim against Phycon for defamation, breach of contract, breach of fiduciary duty, and invasion of privacy based on intrusion on private seclusion and based on false light. Phycon's motion to dismiss will be granted on such claims. However, the second amended complaint adequately alleges an invasion of privacy claim based on misappropriation of identity so to that extent, Phycon's motion to dismiss will be denied.

### V
### Relias' Motion

Relias argues dismissal of the second amended complaint is warranted because (1) the second amended complaint "is so vague and ambiguous as to the basis for claims asserted against [it] that it fails to comply with the *Twombly* standard under Fed. R. Civ. P. 8;" (2) "PhyCon's independent contractor status precludes a finding of liability as to [it];" (3) regarding the claims for defamation and invasion of privacy, Jones "does not allege that [it] published or filed any claims, much less false claims;" (4) Jones "cannot plausibly allege he is a third-party beneficiary to the Defendants' billing services contract;" and (5) Jones "acknowledges he has no relationship with [it], much less a heightened fiduciary relationship." Doc. #32 at 1–2. Relias also argues it "is entitled to judgment on the pleadings … as to [Jones'] claim for punitive damages because [Jones] has not sufficiently alleged any basis for which punitive damages could arise." *Id.* at 2.

## A. Shotgun Pleading

Relias first argues that the second amended complaint's "allegations against 'the Defendants' in each cause of action … are so unduly vague and ambiguous as to warrant dismissal" as a shotgun pleading because it "is left to wonder what act or omission it allegedly committed that gives rise to liability." *Id.* at 5. Jones responds that "[t]hough perhaps not worded as artfully as Relias would prefer, [he] has set forth in … his Second Amended Complaint that … Relias and Phycon submitted false billing to CMS which is the basis of his claims." Doc. #43 at 5. Relias replies that "[t]here simply is not enough pleaded factual content to allow a reasonable inference that [it] is responsible for the allegedly problematic submission." Doc. #47 at 3.

> Federal Rule of Civil Procedure 8 requires that a plaintiff plead sufficient facts to provide notice to a defendant of the factual basis for the plaintiff's claims. Shotgun pleadings violate the notice pleading standard by failing to one degree or another to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Alexander v. Hall*, No. 4:20-cv-21, 2021 WL 800840, at *3 (N.D. Miss. Mar. 2, 2021). While Jones' second amended complaint may not provide great detail, it does provide sufficient factual detail to inform Relias of the basis of Jones' claims against it. Specifically, the second amended complaint alleges that Jones "never signed and dated an 855 form … assigning Relias [his] rights to bill;" Relias contracted with Phycon for billing services; Relias did not have records of Jones providing care on the dates in question; and Phycon submitted charges "associated with" Relias for care on those dates. Doc. #26 at PageID 602–06. Further, in Jones' appeal of the revocation, which Jones "fully incorporated" in the second amended complaint, Jones alleges Relias "fraudulently post-dated [sic] and filed these [forms reassigning his right to bill Medicare for services he provided to Medicare beneficiaries] without his knowledge or consent." Doc. #26-5

16

at PageID 683, 739–40; *see Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (documents attached and "fully incorporated" into the complaint become "part of [the] complaint for all purposes"). Because the second amended complaint alleges sufficient facts to alert Relias of the claims against it, it is not a shotgun pleading and will not be dismissed as such.

### B. Independent Contractor

Relias argues dismissal is warranted because "[i]t is undisputed that PhyCon handled claim filing and billing services as an independent contractor" and "[u]nder Mississippi law, a principal generally is not vicariously liable for the acts of its independent contractor." Doc. #32 at 6. Jones responds that he "has alleged Relias submitted false billing to CMS" rather than that Relias is vicariously liable for Phycon's actions. Doc. #43 at 5. Relias replies that because the second amended complaint "alleges [it] contracted with Phycon to submit invoices to Medicare[,] …[it] did not make the submissions." Doc. #47 at 3.

As discussed above, the second amended complaint does not rely only on Phycon's actions but contains factual allegations regarding Relias' conduct as a basis for relief, including that Relias post-dated and filed the forms which allowed Phycon to submit the claims. *See* Doc. #26-5 at PageID 683. The Court agrees that Jones does not rely on vicarious liability but instead asserts allegations directly against Relias about Relias' conduct. And Phycon's status as an independent contractor is irrelevant as to whether Relias can be held liable for its own actions. Accordingly, this argument fails to justify dismissal.

### C. Defamation

Relias argues Jones' defamation claim against it fails because Jones "does not allege any actions by Relias to make or publish false statements about him or to submit claims to Medicare, false or otherwise" and "[i]t is only by innuendo that [he] proposes the Medicare billing alleged

in the Complaint constituted an accusation of Medicare fraud, and that is insufficient to state a claim for defamation against Relias." Doc. #32 at 7–8. Because Jones' defamation claim against Relias is based on the same allegations as his claim against Phycon and because, as explained above, there is nothing inherently defamatory about the statements to support a defamation claim, dismissal is proper.

### D. Invasion of Privacy

Similar to Phycon, Relias argues Jones cannot state a claim for any subtort of invasion of privacy. Doc. #32 at 8. Because the second amended complaint does not provide any additional facts with respect to Relias than those provided for Phycon as to these claims, dismissal of the false light and intrusion upon seclusion claims against Relias is proper for the same reasons dismissal is proper as to those claims against Phycon. And Relias' argument that "no reimbursement was paid to [it] or to anyone for the claim" fails because, as discussed above, Jones need only allege that Relias used his identity for a commercial purpose. Since the second amended complaint alleges Relias "fraudulently post-dated and filed [forms allowing it to bill for Jones] without his knowledge or consent,"[11] Jones sufficiently alleges an invasion of privacy claim for misappropriation of identity.

### E. Breach of Contract

Relias argues Jones "does not assert a plausible claim for breach of contract as an alleged intended third-party beneficiary of the billing services agreement between Relias and PhyCon, thus the claims should be dismissed." Doc. #32. Because Jones' allegations for his breach of contract claim against Relias are the same as his allegations against Phycon, dismissal is proper as to Relias for the same reasons as dismissal of the breach of contract claim against Phycon.

---

[11] Doc. #26-5 at PageID 683.

## F.  Breach of Fiduciary Duty

Relias argues Jones "does not allege any facts that would give rise to any fiduciary duty owed by [it] to him" because the second amended complaint alleges Jones "had no relationship at all with [it]."  Doc. #32 at 13.  As discussed above, a "fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed."  *Gibson*¸ 186 So. 3d at 852.  The second amended complaint alleges that Jones had a relationship with NMMC but denies any relationship with Relias.  *See* Doc. #26 at PageID 602–06.  Thus, Jones has failed to plead sufficient facts to show a fiduciary relationship existed between him and Relias.  It follows that the breach of fiduciary duty claim against Relias fails too.

## G.  Punitive Damages

Relias "requests judgment on the pleadings as to [Jones'] demand for punitive damages" on grounds that Jones "makes only conclusory allegations of intentional actions and … he does not specify particular facts as to Relias which could lead to a finding of liability on any of his claims, much less facts which would establish punitive damages by clear and convincing evidence."  Doc. #32 at 13–14.  Jones responds that he has "pled sufficient legal facts for his punitive damage request" to survive because he "alleged Relias' conduct in submitting the false claims to Medicare amounted to gross negligence."  Doc. #43 at 9–10.  Relias replies that Jones "has alleged no specific facts as to [it] which could plausibly be interpreted as inferring intentional conduct on [its] behalf."  Doc. #47 at 8.

Under Mississippi law, "[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless

disregard for the safety of others, or committed actual fraud."  Miss. Code Ann. § 11-1-65(a).

The Mississippi Supreme Court "has stated that gross negligence is that course of conduct which, under the particular circumstances, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them. On the other hand, simple negligence is not of itself evidence sufficient to support punitive damages."  *In re Guardianship of Duckett*, 991 So. 2d 1165, 1176 (Miss. 2008) (cleaned up).

As mentioned above, the second amended complaint alleges "Relias fraudulently posted-dated [sic] and filed [forms assigning Jones' billing rights to it] without [Jones'] knowledge or consent" and as a result, Jones lost his Medicare billing privileges.  Doc. #26-5 at PageID 683; *see id.* at PageID 677–78 ("Relias … fraudulently filed a Medicare Enrollment Application Form 855 without Dr. Jones's knowledge or consent that listed the wrong address and then fraudulently submitted charges to CMS under his NPI number.").  Jones further alleges that the submission of these false claims "was done with a complete lack of care" amounting to gross negligence.  Doc. #26 at PageID 609.  Contrary to Relias' argument, the second amended complaint alleges, at a minimum, that Relias acted with gross negligence.  So judgment on the pleadings as to punitive damages is not warranted.

## H.  Summary

The second amended complaint fails to state a claim against Relias for defamation, invasion of privacy based on false light and based on intrusion upon seclusion, breach of contract, and breach of fiduciary duty.[12]  Relias' motion to dismiss will be granted as to such claims but otherwise will be denied.

---

[12] Although Relias moved to dismiss the entire second amended complaint, it did not present arguments directed at Jones' negligence claims.

## VI
## Nature of Dismissal

"While a court can dismiss a deficient pleading, it should provide *at least* one opportunity to cure pleading deficiencies before dismissing a case …." *Dierlam v. Trump*, 977 F.3d 471, 478 n.44 (5th Cir. 2020) (cleaned up) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

Here, because it is not "clear that the defects are incurable" and Jones has not "advise[d] the court that [he is] unwilling or unable to amend in a manner that will avoid dismissal,"[13] the dismissal will be without prejudice and Jones will be allowed a period of time to seek leave to amend.

## VII
## Conclusion

Phycon's motion to dismiss [28] and Relias' motion to dismiss and motion for judgment on the pleadings [31] are both **GRANTED in Part and DENIED in Part**. Both motions are GRANTED to the extent they seek dismissal of the claims for defamation, breach of fiduciary duty, breach of contract, and invasion of privacy based on false light and intrusion upon seclusion. The motions are DENIED in all other respects. Within fourteen (14) days of this order, Jones may seek leave to amend his second amended complaint.[14]

**SO ORDERED**, this 23rd day of September, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[13] *Great Plains Tr. Co.*, 313 F.3d at 329.

[14] Should Jones fail to seek leave to amend or if it is ultimately determined amendment would be futile, the claims will be dismissed with prejudice.